**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**UNITED STATES OF AMERICA**

**VERSUS**

**KENTRELL D. GAULDEN**

**CRIMINAL ACTION**

**NO. 21-392-RGK**

**OPPOSITION TO THE GOVERNMENT'S MOTION IN LIMINE SEEKING TO INTRODUCE OTHER CRIMES EVIDENCE**

## I. Background

Kentrell Gaulden is charged with possessing a specific FN .45 caliber pistol and ammunition on a specific date and time within the Central District of California. The Government advises that it seeks to introduce "other acts" evidence in its case in chief through the provisions of Federal Rules of Evidence Rule 404(b) (Ex. A & B). More specifically, they seek to introduce evidence of gun possession from a pending federal case in Baton Rouge, an unprosecuted event in Philadelphia, music from two of Mr. Gaulden's songs and two other Instagram posts from Baton Rouge. In response, we ask the court to exercise its discretion under Federal Rules of Evidence Rule 403 to exclude this evidence in its entirety to prevent jury confusion which will occur if this simple constructive possession prosecution devolves into three separate prosecutions and to exclude prejudicial inferences that will occur when hardcore rap lyrics are presented to

the jury. The court has the authority to exclude marginally relevant evidence when its probative value is substantially outweighed by its prejudicial effect which will occur when hard core rap lyrics are presented to this jury.

**II.      Other alleged gun possession**

The Government seeks to introduce evidence of two alleged gun possessions as other crimes evidence. One involves a current federal prosecution in the Middle District of Louisiana and the other involves a social media post taken when the defendant was at his custom jeweler in Philadelphia. The following sections are factual recitations for the case at hand and these other two events.

   A. California Case

Kentrell Gaulden was arrested in Baton Rouge, along with 16 other African American males for joint constructive possession of numerous firearms and drugs. On March 10, 2021, this case was "adopted" by the Government when it obtained an indictment of Kentrell Gaulden for possessing two of those guns. This indictment is the basis for the arrest warrant LAPD, LACSO and the FBI used to swarm in and arrest Kentrell Gaulden leading to the discovery of the FN .45 Caliber pistol in this case.

After securing said indictment, the police obtain a search warrant for the defendant's cell phone seeking both current and historical data to determine his location to apprehend him. Ultimately, the FBI obtains the cell phone information

and makes plans to arrest him near his home in Tarzana, California.

On the day of his arrest, FBI task force officer Kevan Beard begins his surveillance of Gaulden's home. He observes two women and their kids exit a car and leave the Amigo Street home. The FBI determines that the car is registered to Marvin Ramsey whom they know is Gaulden's personal videographer who accompanies him around the clock securing "B-roll" footage for potential use in music videos and social media posts in the future.

Shortly thereafter, Beard observes the garage door open and a Mercedes Maybach exit the residence. At this point in time, Beard cannot say whether Gaulden is in the car nor can he say how many people are in the car. Beard and another task force officer, Kevin Currie, pursue Gaulden in unmarked cars while two marked units are instructed to take down the Maybach. When the Maybach is pulled over, an ungloved African American male tosses its key fob out of the window. As numerous armed officers with weapons drawn either assume defensive positions or approach the vehicle, the Maybach speeds off ultimately disappearing from the sight of the units in pursuit. Law enforcement ultimately locate the Maybach but whoever was inside of it fled. Through the coordinated use of an aerial helicopter and a trained k-9 officer, Gaulden will be apprehended over an hour later hiding under a residence. Meanwhile, the Maybach is secured and the FN .45 caliber pistol is located somewhere on the back seat floorboard of the car. Also, in the car is over $100,000

of custom and high valued jewelry belonging to Gaulden purchased from one of his custom jewelers at Shyne's in Philadelphia. We will now turn to the Philadelphia case as it involves the Shyne Jewelers mentioned above.

B. The Philadelphia Case

The FN .45 caliber pistol that is the subject of the California prosecution was purchased by Joel Diggs from Jim's Firearms in Baton Rouge, Louisiana on December 10, 2020. Subsequently, the FBI obtained a social media post of Mr. Gaulden holding an object similar in appearance to an FN .45 caliber pistol as opined by their ATF Expert Kevin Allred. Despite enhancing the still shots of the post, expert Allred can not say that object was the same gun found in the Maybach.

In presenting this evidence, the Government will present a level of testimony consistent with a full-fledged prosecution of the Philadelphia case. They will present the owner of the Baton Rouge store where the California gun was purchased, the owner of Shyne's Jewelers who will identify Gaulden as the person in the image and establish a commercial relationship between Gaulden and the store, and an expert to opine that the object Gaulden is holding appears to be a real gun.

The California case's genesis is an indictment from the Middle District of Louisiana. We will now turn to the facts of that case.

C. The Baton Rouge Case

On September 28, 2020, Mr. Gaulden and more than a dozen other African

American males were all arrested for jointly and constructively possessing numerous guns and drugs.  None of the arresting officers observe Mr. Gaulden possessing any of the  firearms. The state court arrest concerned a stash of weapons discarded in an open field, located in parked cars in the neighborhood and one gun found on Marvin Ramsey, Gaulden's videographer, when he was detained.  The state court case has never been charged.  The United States adopted the case as it pertains to two of the weapons recovered at the scene.  The defense believes the prosecution was limited to these two weapons as the videographer, Marvin Ramsey, filmed Gaulden handling them.  However, it was the warrant for seizing this film that was suppressed (Ex. C).

   D. Social Media Images from Baton Rouge

The Government has provided a short social media clip and a number of still images, some of which appear with the date, December 27, 2020, although a separate one shows a date, January 31 without a year reference.  Collectively, they show Mr. Gaulden again holding an object resembling the firearm found in the Maybach on March 22, 2021. Two of the still images contain the hashtag "#propgun." Several photographs are also provided of houses and streets, presumably purporting to show the possession occurred in Baton Rouge, Louisiana.

## III. Basis For Excluding the Philadelphia and Baton Rouge Allegations

a. Confusion of Issues

As it now stands, there is a potential that the Government could present evidence from three distinct actual or potential prosecutions to obtain a conviction for what should be a relatively straightforward constructive possession case. The case at bar is not complicated. Indeed, the defense is willing to stipulate to nearly all the elements to the crime: felony status, knowledge of said status and interstate nexus. The sole issue is possession. And, even with this issue, there are many facts not in dispute. The defense does not contest that the Maybach was owned by Gaulden; that valuable property belonging to Gaulden was found inside; and that Gaulden was inside of the car when the police attempted to stop the Maybach after exiting the Amigo residence. Counsel suspect the Government will introduce a recorded jail call from Gaulden acknowledging he was inside of the Maybach. The real issues are: 1) whether he knew the gun was inside of the car and 2) whether he intended to possess it. It's a relatively simple case. Yet the Government seeks to "prosecute" two other cases within this forum in an attempt to buttress a debatable case here with prejudicial evidence from elsewhere, hoping the jury will infer Gaulden's "bad character" and convict him.

At the close of this trial, counsel anticipates the court will instruct the jury that it may consider the "other acts" evidence on the question of the defendant's intent

and for no other purpose. *Ninth Circuit Model Criminal Jury Instruction 3.3*. Since the defense stipulates to nexus, felony status and knowledge, those 3 witnesses associated with the social media post from Philadelphia are the ones necessary to proceed to verdict in Pennsylvania. Yet they will not prosecute him there because they did not recover the alleged gun from the social media post; the owner cannot say he saw Gaulden bring the object into the store nor that it was a real firearm; and the expert can not say this image shows Gaulden possessing the very same weapon seized from the Maybach. In summary, the Government has not indicted Gaulden in Philadelphia because they know they can not prove that case beyond a reasonable doubt but will, in essence, prosecute him in California for that alleged crime because of the lower burden of proof associated with "other crimes evidence". In the end, if the court does not exclude this evidence, Gaulden is left simply with having faith that the jury will only consider the evidence for a limited purpose as instructed and that none of the 12 impaneled jurors will think "well, he had a gun in January, he must have had a gun in March" which is flagrantly improper.

This now leaves us with the Baton Rouge case to discuss.

At the time of this writing, counsel is not exactly certain as to what the Government intends to introduce into evidence concerning the Baton Rouge case being prosecuted in the Middle District of Louisiana. Gaulden is being prosecuted for two weapons recovered from the state arrest due, in large measure, to images

found on his film footage within his videographer's camera. Since this evidence was suppressed by another federal court, the defense believes the Government should be collaterally estopped from introducing those images at this trial.

b. <u>Collateral Estoppel</u>

In the event the Government seeks to introduce evidence of the film footage from the Baton Rouge case into evidence in this prosecution, we suggest that they are estopped from doing so. The Middle District Court suppressed the evidence recovered from the videos taken by Marvin Ramsey. The Government urged a reconsideration which was denied (Ex. D). As of this writing, the Government has not noticed its intent to appeal that decision. Assuming the district court's ruling remains, the viability of a sustainable prosecution is suspect. The fundamental requirements for collateral estoppel are: 1) same parties and 2) same issues. Here the United States and Kentrell Gaulden are the common parties. The common issue is the film footage. The warrant in question references evidence which was already suppressed for the most part after an adversarial hearing in which the Government was a full participant, based on law enforcement's material misrepresentations to the original issuing magistrate. *United States v. Gaulden*, 2022 WL 565922 (M.D.La. 2022). Under "collateral estoppel", the Government is now precluded from trying to relitigate the issue by seeking to introduce references to the already-suppressed evidence. *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980);

*Chanley v. Gillis*, 466 Fed.Appx. 582 (9th Cir. 2012); *United States v. $74,334.00 in U.S. Currency*, 2011 WL 13323874 (C.D.Cal. 2011). In all of the cited cases, collateral estoppel was applied against a defendant seeking to re-litigate an adverse decision on his motion to suppress. The Government should certainly not be allowed to try to re-litigate a defendant's favorable decision on a motion to suppress.

The Middle District Court's ruling suppressing the warrant to seize and search the film footage due to material misrepresentations made to establish probable cause should exclude the very same evidence from being introduced here. A contrary ruling would not only violate the principle of collateral estoppel but would also reward police for established misconduct. Furthermore, it would allow the Government to take that same tainted evidence and attempt to prove it before a jury with a lower burden of persuasion which, when coupled with the Philadelphia case, is nothing more than cumulative and prejudicial evidence. As noted by the Ninth Circuit decades ago, "[t]he use of other crimes evidence is not looked on favorably and its use must be narrowly circumscribed and limited." *United States v. Lewis* 787 F.2d 1318 (9th Cir. 1986).

c. Old Chief Analogy

The Government's formal notice alleges that the Baton Rouge case is inexorably intertwined with the case at hand- in other words "res gestae." This assertion is inaccurate as the only relationship between the two matters is the need

to arrest Kentrell Gaulden. The Middle District arrest warrant is inadmissible at trial because (1) it's hearsay, and does not come in under the hearsay exception of Federal evidence Rule 803(8); (2) it references evidence which the Middle District suppressed, so that the Government is collaterally estopped from introducing it; and (3) Mr. Gaulden does not contest that he was arrested in California pursuant to a warrant and is willing to so stipulate, thus eliminating any need for the Government to publish the warrant itself or specify the underlying offense, which would be unduly prejudicial.

Arrest warrants do not come in under the hearsay exception of Federal Evidence Rule 803(8) because they are prepared by law enforcement officers in an adversary setting and therefore" lack sufficient guarantees of trustworthiness." *United States v. Banuelos*, 88 F.Appx. 188 , 189-190 (9th Cir. 2004); *cert. denied*, 542 U.S. 928, 124 S.Ct. 2892, 159 L.Ed.2d 790 (2004); *United States v. Hernandez-Rojas*, 617 F.2d 533, 535 (9th Cir. 1980), *cert. denied*, 449 U.S. 864, 101 S.Ct. 170, 66 L.Ed.2d 81 (1980) (citing *United States v. Stone*, 604 F.2d 922 (5th Cir. 1979).

The defense does not contest Gaulden's prior felony status. This stipulation affords a benefit to the accused of shielding the nomenclature of the prior felony conviction from the jury to prevent prejudice. In, *Old Chief*, the Supreme Court noted that evidence of the name and nature of a prior offense generally carries the risk of unfair prejudice to the defendant and allowed the accused to stipulate to prior

felony status in gun cases such as this one. *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed2d 574 (1997). Shouldn't the same logic extend to the allegation contained within a warrant? Indeed, the dangers of prejudice are greater here since Gaulden has not been convicted for the underlying arrest warrant. The jury need not know what Mr. Gaulden was wanted for in the Middle District of Louisiana.

D. Confusion of Issues

Counsel concludes this portion of the memorandum by urging the court to exercise its authority under Federal Evidence Rule 403 and prevent a confusion of the issues presented to the jury. The impaneled jury is simply asked to decide whether Gaulden possessed a particular gun and ammunition on or about a certain day in Los Angeles. They are not asked to decide whether he possessed the same, or similar, or another gun anywhere else- including Baton Rouge and Philadelphia.

## III. Music Lyrics

The Government seeks to introduce evidence from two songs sung by Mr. Gaulden: *Gunsmoke* and *Life Support*. The lyrics from Gunsmoke is considered a hardcore rap song talking about gangs and shootings etc. (Ex. E). Within the lyrics it does mention an FN pistol. However, it should be noted that this song was released long before the FN gun seized from the Maybach was purchased. And, as discussed more fully below, the song contains highly inflammatory lyrics that does nothing but

place Gaulden in a bad light. The other song "Life Support" does reference Shyne Jewelers (Ex. F). Gaulden does not dispute the commercial relationship between Gaulden and the store, nor do they contest that Gaulden purchased many jewelry pieces seized out of the Maybach from Shyne's.

A. Basis For Exclusion- Government Position in Other Cases

In an ironic twist of fate, the defense urges arguments that were successfully raised by the Government when it sought to exclude evidence of rap music by the defense when used to suggest a third party was culpable for the prosecuted crime. *United States v. Moi*, 2022 U.S. Dist. LEXIS 41178 (D.Alaska 03.08/2022). In *Moi*, the Government argued that the introduction of rap music made by the third party would create a risk that the third party was a violent person and substantially outweigh the probative value of the evidence. In this case, "Gunsmoke" is a hardcore rap song about weapons and shooting people. It's for entertainment. It is not an admission of other bad acts but it does paint the rappers in a bad light and the jury may infer from the song that Mr. Gaulden is a violent person and take those feelings with them into the deliberation room.

The Government also contended in *Moi* that the out of court statements referenced in one rap video could be taken by the jury improperly for the truth of the matter asserted and conclude that the because the third party in the video acted violently in the video he would have likely acted violently on the date in question

within their indictment. The same can be said here. Because these lyrics discuss handling and violently using weapons, this jury may infer that Gaulden possessed the FN .45 Caliber pistol recovered from the Maybach.

In deciding *Moi*, the district court believed the introduction of a music video would likely confuse the jury and, in essence, was nothing more than propensity evidence when it excluded its admission at trial.

B. <u>Basis For Exclusion-Empirical Data Suggests Prejudice</u>

"Rap Lyrics as Evidence: An Examination of Rap Music, Perceptions of Threat, and Juror Decision Making" is a research paper documenting multiple studies aimed at determining whether prosecutors were treating rap lyrics as autobiographical confessions of illegal behavior and sought to seek how they lyrics were treated when treated as rap lyrics as opposed to country music and to see if the race of the songwriter impacted that treatment. Adam Dunbar, Rap Lyrics as Evidence: An Examination of Rap Music, Perceptions of Threat, and Juror Decision Making (PhD dissertation, University of California, Irvine 2017). In one experiment, the lyrics in question were from *"Bad Man's Blunder*" and concerned the shooting of a deputy. Participants viewed the lyrics more literally when they believed it was from a rap song as opposed to a country music song. In a second experiment, portions of Johnny Cash's "*A Boy Named Sue*" were used. In this experiment, people believing the song to be rap music viewed the lyrics more negatively and literal than those believing it

to be a country song. In summary, empirical data suggest that the average person is more likely to negatively view the lyrics of a song and take the words more literally when they believe it is rap music as opposed to other genres of music (Ex. G, Chapter 2). This makes the presentation of rap music not directly associated with the arrest event extremely prejudicial and should be excluded, in instances such as this, where there is little to no probative value associated with the lyrics.

C. Court's role as 403 Gatekeeper

It is well established that evidence of a prior crime, wrong, or incident "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed.R.Evid. 404(b)(1). "The rule is designed to avoid a danger that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced that the defendant is a bad man deserving of punishment." *United States v. Brown*, 880 F.2d 1012, 1014 (9th Cir. 1989) (internal citation omitted). Rule 404(b), however, carves out an exception to the general rule where the proposed evidence is offered to serve "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

The Government carries the burden to prove that the proposed evidence satisfies four requirements:

> (1) the evidence tends to prove a material point (materiality); (2) the other act is not too remote in time (recency); (3) the evidence is sufficient to support a finding that defendant committed the other act (sufficiency); and (4) . . . the act is similar to the offense charged (similarity).

*United States v. Berckmann*, 971 F.3d 999, 1002 (9th Cir. 2020). But even then, "[t]he use of such evidence must be narrowly circumscribed and limited." *United States v. Bailleaux*, 685 F.2d 1105, 1109 (9th Cir. 1982). "Courts must be extremely careful to guard against the danger that defendants will be convicted because they have previously committed a [prior] serious criminal offense rather than because the Government has introduced evidence sufficient to prove beyond a reasonable doubt that they are guilty of the offense for which they are being tried." *Id*.

Here, the Government contends that Gaulden's prior behavior – (1) recording songs in which firearms are referenced, and (2) recording songs in which Shyne jewelry is referenced- show knowledge, intent to possess, and identity. However, there is no logical connection between the prior behavior and the charged offense other than the implication that Gaulden has a propensity for gun possession and was therefore in possession of a gun here—an impermissible inference

under Federal Rule 404(b) and an improper consideration when determining whether the government is able to meet its burden of proof. As the 9th Circuit noted, when the Government seeks to admit evidence of a defendant's knowledge, they have "emphasized that the government must prove a logical connection between the knowledge gained as a result of the commission of the prior act and the knowledge at issue in the charged act." *United States v. Mayans*, 17 F.3d 1174, 1181-82 (9th Cir. 1994). *Mayans* instructs that in cases such as this one, the materiality and similarity prongs of the four-part test merge essentially into one: "similarity is necessary to indicate knowledge and intent because it can furnish the link between knowledge gained in the prior act and the claimed ignorance of some fact in the offense charged." Id. at 1182 (internal quotation marks omitted). These lyrics do nothing of the sort. Whether Gaulden sung about or shopped at Shyne jewelers is not at issue in the case. The defense concedes Shyne's was a custom jeweler for Mr. Gaulden and that many of his products were seized from the Maybach belonged to him. Lyrics about an FN Pistol offer limited relevant evidence. This song was released almost a year before the gun referenced in the indictment was even purchased. Even if Mr. Gaulden is familiar with various models of guns and sings about them does not mean that he knew this particular gun was secreted on the passenger floor of the Maybach when police attempted to pull his car over to arrest him.

## IV. Conclusion

The Government's intended "404(b)" evidence should be excluded because it is both prejudicial and confuses the jury, as it references many instances not properly before the court and, for which, Mr. Gaulden has not been convicted. This conclusion starts with the music lyrics. These lyrics are highly prejudicial as they discuss hardcore rap which has been empirically established to be more negatively received then other genres of music. It would be one thing if the music described this arrest. But a song referencing a similar gun well before the gun in the indictment was purchased, and another song referencing a jeweler whose relationship with Mr. Gaulden is not in dispute, offer very minimal probative value, and are substantially outweighed by the prejudice contained within the words of the songs. Additionally, the Government seeks to blend three potential trials into one. Indeed, many of the Government's tentative witnesses will be presented solely to prove up a Philadelphia prosecution that the Government knows would not come close to reaching its burden of proof over there but now seeks to supplement a weak case here with the very same evidence and relies upon a lesser burden of persuasion coupled with a jury instruction to do so. This same tactic may be used to present evidence from the Baton Rouge case that is still pending, though compromised, should the Government seek to introduce suppressed evidence from that case into this case. They should be estopped from doing so.

This court as gatekeeper should not allow testimony whose only purpose is to enrage, confuse, and prejudice the jury. If there are other allegations in other jurisdictions, those allegations can be prosecuted by themselves in the proper jurisdictions, with the presumption of innocence and the burden of proof beyond a reasonable doubt.

Respectfully Submitted:

**MANASSEH, GILL, KNIPE & BÉLANGER, P.L.C.**

/s/ James P. Manasseh
JAMES P. MANASSEH
Louisiana Bar No. 19022
Attorney for Defendant
8075 Jefferson Highway
Baton Rouge, LA 70809
(225) 383-9703 (Telephone)
(225) 383-9704 (Facsimile)
Email: jimmy@manassehandgill.com

Respectfully Submitted:

**MANASSEH, GILL, KNIPE & BÉLANGER, P.L.C.**

/s/ Ian F. Hipwell
IAN F. HIPWELL
Louisiana Bar No. 06947
Attorney for Defendant
8075 Jefferson Highway
Baton Rouge, LA 70809
(225) 383-9703 (Telephone)
(225) 383-9704 (Facsimile)
Email : ian@manassehandgill.com

Respectfully Submitted:

**MANASSEH, GILL, KNIPE & BÉLANGER, P.L.C.**

/s/ André Bélanger
ANDRÉ BÉLANGER
Louisiana Bar No. 26797
Attorney for Defendant
8075 Jefferson Highway
Baton Rouge, LA 70809
(225) 383-9703 (Telephone)
(225) 383-9704 (Facsimile)
Email: andre@manassehandgill.com

Respectfully Submitted:

**MANASSEH, GILL, KNIPE & BÉLANGER, P.L.C.**

/s/ Tanner C. Woods
TANNER C. WOODS
Louisiana Bar No. 37376
Attorney for Defendant
8075 Jefferson Highway
Baton Rouge, LA 70809
(225) 383-9703
(225) 383-9704
Email: tanner@manassehandgill.com

Respectfully Submitted:

**MANASSEH, GILL, KNIPE & BÉLANGER, P.L.C.**

/s/ Yigal Bander____________________
YIGAL BANDER
Louisiana Bar No. 24953
Attorney for Defendant
8075 Jefferson Highway
Baton Rouge, LA 70809
(225) 383-9703 (Telephone)
(225) 383-9704 (Facsimile)
Email: yigal@manassehandgill.com

Respectfully Submitted:

**MANASSEH, GILL, KNIPE & BÉLANGER, P.L.C.**

/s/ W. Robert Gill___________
W. ROBERT GILL
Louisiana Bar No. 20557
Attorney for Defendant
8075 Jefferson Highway
Baton Rouge, LA 70809
(225) 383-9703 (Telephone)
(225) 383-9704 (Facsimile)
Email: robby@manassehandgill.com

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**UNITED STATES OF AMERICA**

**CRIMINAL ACTION**

**VERSUS**

**NO. 21-392-RGK**

**KENTRELL D. GAULDEN**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing Memorandum in Support of the Defendant's Motion In Limine with the Clerk of Court by using the CM/ECF which will send a notice of electronic filing to opposing counsel in the United States Attorney's Office.

Baton Rouge, Louisiana this 8th day of July, 2022.

s/ James P. Manasseh
JAMES P. MANASSEH