STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
AMANDA B. ELBOGEN (Cal. Bar No. 332505)
RAJESH R. SRINIVASAN (Cal. Bar No. 310510)
Assistant United States Attorneys
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-7416/5748
    Facsimile: (213) 894-6269
    Email:     amanda.elbogen@usdoj.gov
               rajesh.srinivasan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

                FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-392-RGK |
|---|---|
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | Trial:     July 12, 2022<br>Time:      9:00 a.m. |
| KENTRELL GAULDEN, | Location:  Courtroom of the<br>           Hon. R. Gary<br>           Klausner |
| Defendant. | |

     Plaintiff United States of America, by and through its counsel
of record, the Acting United States Attorney for the Central District
of California and Assistant United States Attorneys Amanda B. Elbogen
and Rajesh R. Srinivasan, hereby submits its trial memorandum for the
above-captioned case.

//

//

This Trial Memorandum is based upon the attached memorandum of points and authorities, the files and records in this case, and further evidence and argument as the Court may permit.

Dated: July 8, 2022                    Respectfully submitted,

                                       STEPHANIE S. CHRISTENSEN
                                       Acting United States Attorney

                                       SCOTT M. GARRINGER
                                       Assistant United States Attorney
                                       Chief, Criminal Division


                                        */s/ Rajesh R. Srinivasan*
                                       AMANDA B. ELBOGEN
                                       RAJESH R. SRINIVASAN
                                       Assistant United States Attorneys

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE(S)

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    INTRODUCTION................................................1

II.   FACTUAL SUMMARY.............................................2

      A.    Arrest and Flight.....................................2

      B.    Search..............................................3

      C.    Investigation.......................................4

III.  STATEMENT OF CHARGES AND ELEMENTS OF EACH CHARGE.............5

IV.   DEFENDANT'S CUSTODY STATUS..................................5

V.    THE GOVERNMENT'S CASE-IN-CHIEF..............................5

VI.   LEGAL AND EVIDENTIARY ISSUES................................6

      A.    Pending Motions in Limine.............................6

      B.    Relevance and Probative Value.........................7

      C.    Authentication and Identification.....................7

      D.    Physical Evidence....................................8

      E.    Chain of Custody.....................................9

      F.    Photographs.........................................9

      G.    Video Recordings....................................9

      H.    Duplicates.........................................10

      I.    Maps and Diagrams..................................10

      J.    Lay Law Enforcement Testimony......................11

      K.    Expert Opinion Testimony...........................12

      L.    Cross-Examination..................................14

      M.    Cross-Examination of Defendant.....................14

      N.    Cross-Examination of Defense Character Witnesses........15

      O.    Hearsay............................................16

            1.    Defendant's Prior Statements.................16

i

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                                    PAGE(S)

        2.    Certified Business Records and Other Self-
              Authenticating Evidence..............................17

    P.    Reciprocal Discovery....................................18

    Q.    Opening Statements......................................20

    R.    Jury Nullification......................................20

VII. CONCLUSION.................................................21

**TABLE OF AUTHORITIES**

**DESCRIPTION**                                                        **PAGE(S)**

**Cases**

Bourjaily v. United States,
   483 U.S. 171 (1987) ......................................... 16

Gallego v. United States,
   276 F.2d 914 (9th Cir. 1960) ............................. 8, 9

Kennedy v. Los Angeles Police Dep't,
   901 F.2d 702 (9th Cir. 1990) ............................... 16

Ohler v. United States,
   529 U.S. 753 (2000) ..................................... 12-13

Michelson v. United States,
   335 U.S. 469 (1948) ..................................... 13, 14

People of Territory of Guam v. Ojeda,
   758 F.2d 403 (9th Cir. 1985) ............................... 9

United States v. Aceves-Rosales,
   832 F.2d 1155 (9th Cir. 1987) .............................. 18

United States v. Anderson,
   813 F.2d 1450 (9th Cir. 1987) .............................. 11

United States v. Barragan,
   871 F.3d 689 (9th Cir. 2017) ............................... 10

United States v. Black,
   767 F.2d 1334 (9th Cir. 1985) .............................. 13

United States v. Chu Kong Yin,
   935 F.2d 990 (9th Cir. 1991) ............................... 7

United States v. Collicott,
   92 F.3d 973 (9th Cir. 1996) ................................ 15

United States v. Cuozzo,
   962 F.2d 945 (9th Cir. 1992) ............................... 13

United States v. Curtin,
   489 F.3d 935 (9th Cir. 2007) ............................... 17

United States v. Gadson,
   763 F.3d 1189 (9th Cir. 2014) ........................... 7, 11

United States v. Hock Chee Koo,
   770 F. Supp. 2d 1115 (D. Or. 2011) ......................... 7

United States v. Huber,
   772 F.2d 585 (9th Cir. 1985) ............................... 16

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                    <u>PAGE(S)</u>

<u>United States v. King</u>,
   587 F.2d 956 (9th Cir. 1978) .................................. 9

<u>United States v. Kleinman</u>,
   880 F.3d 1020 (9th Cir. 2017) ................................. 19

<u>United States v. May</u>,
   622 F.2d 1000 (9th Cir. 1980) ................................. 9

<u>United States v. Miranda-Uriarte</u>,
   649 F.2d 1345 (9th Cir. 1981) ................................. 13

<u>United States v. McCollom</u>,
   664 F.2d 56 (5th Cir. 1981) .................................. 14

<u>United States v. Moreno</u>,
   243 F.3d 551 (9th Cir. 2000) ................................. 11

<u>United States v. Nash</u>,
   115 F.3d 1431 (9th Cir. 1997) ................................ 18

<u>United States v. Oaxaca</u>,
   569 F.2d 518 (9th Cir. 1978) .................................. 9

<u>United States v. Ortega</u>,
   203 F.3d 675 (9th Cir. 2000) ................................. 15

<u>United States v. Ortiz</u>,
   776 F.3d 1042 (9th Cir. 2015) ................................. 7

<u>United States v. Pino-Noriega</u>,
   189 F.3d 1089 (9th Cir. 1999) ................................ 10

<u>United States v. Scholl</u>,
   166 F.3d 964 (9th Cir. 1999) ................................. 18

<u>United States v. Powell</u>,
   955 F.2d 1206 (9th Cir. 1992) ................................ 19

<u>United States v. Skeet</u>,
   665 F.2d 983 (9th Cir. 1982) ................................. 11

<u>United States v. Ray</u>,
   930 F.2d 1368 (9th Cir. 1990) ................................ 16

<u>United States v. Smith</u>,
   591 F.3d 974 (8th Cir. 2010) ................................. 10

<u>United States v. Sand</u>,
   541 F.2d 1370 (9th Cir. 1976) ................................. 8

<u>United States v. VonWillie</u>,
   59 F.3d 922 (9th Cir. 1995) .................................. 10

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                          <u>PAGE(S)</u>

<u>United States v. Weiner,</u>
  578 F.2d 757 (9th Cir. 1978) .................................. 12

<u>United States v. Harrington,</u>
  923 F.2d 1371 (9th Cir. 1991) ................................. 8

<u>United States v. Vallejos,</u>
  742 F.3d 902 (9th Cir. 2014) ................................. 15

<u>United States v. Vizcarra-Martinez,</u>
  66 F.3d 1006 (9th Cir. 1995) ................................. 17

<u>Zal v. Steppe,</u>
  968 F.2d 924 (9th Cir. 1992) ................................. 19

**Statutes**

18 U.S.C. § 922 ...................................... 1, 2, 4, 5

**Rules**

Fed. R. Crim. P. 16 ............................... 10, 11, 18

Fed. R. Evid. 104 .................................... 16

Fed. R. Evid. 106 .................................... 15

Fed. R. Evid. 401 .................................. 7, 19

Fed. R. Evid. 402 .................................... 7

Fed. R. Evid. 403 .................................. 7, 19

Fed. R. Evid. 404 ................................. 17, 18

Fed. R. Evid. 405 ................................. 13, 14

Fed. R. Evid. 611 .................................... 12

Fed. R. Evid. 701 .................................... 10

Fed. R. Evid. 702 .................................... 11

Fed. R. Evid. 703 .................................... 11

Fed. R. Evid. 801 .................................... 15

Fed. R. Evid. 803 ................................. 16, 17

Fed. R. Evid. 901 .................................. 7, 10

Fed. R. Evid. 902 .................................... 17

## <u>TABLE OF AUTHORITIES (CONTINUED)</u>

<u>**DESCRIPTION**</u>                                                                    <u>**PAGE(S)**</u>

Fed. R. Evid. 1003 ............................................. 10

**Other Authorities**

32 McCormick on Evid. § 215 (7th ed.) ............................ 9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On March 22, 2021, law enforcement officers tried to arrest defendant Kentrell Gaulden ("defendant") -- also known as rapper "YoungBoy Never Broke Again," "NBA YoungBoy," "Youngboy," "YB," and "Top" -- in Tarzana, California, on a federal arrest warrant issued by the Middle District of Louisiana for a violation of 18 U.S.C. § 922(g): being a felon in possession of a firearm.  Defendant fled the police in his car, leading them on a high-speed chase.  He then abandoned the car and fled on foot.  He was eventually found hiding in a stranger's backyard.  Law enforcement searched defendant's abandoned car, where they found an FN pistol -- specifically, a FNX .45 caliber model with a serial number FX3U140732 (the "FNX-45") -- along with .45 caliber ammunition, tens of thousands of dollars in cash, and over half a million dollars' worth of jewelry, much of which was custom-made for defendant and bore his personal rap logo. Because defendant had a prior felony conviction for Aggravated Assault with a Firearm, he was prohibited from possessing the firearm and ammunition.

Defendant is charged with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g).  (See Dkt. 1.)  At trial, the parties have agreed to stipulate to defendant's felon status, defendant's knowledge of his felon status, and the interstate nexus of the firearm and ammunition found in defendant's car.  Therefore, to the best of the government's knowledge, the only element that defendant plans to dispute is whether he knowingly possessed a firearm or ammunition on March 22, 2021.

1  **II.   FACTUAL SUMMARY**

2       At trial, the government will seek to prove the following:

3       **A.   Arrest and Flight**

4       On March 10, 2022, an indictment was filed in the United States

5  District Court for the Middle District of Louisiana charging

6  defendant with violating 18 U.S.C. 922(g)(1), being a felon in

7  possession of a firearm, and the court issued a warrant for his

8  arrest.[1]  About nine days later, law enforcement obtained a search

9  warrant for the location of defendant's cell phone.  The next day,

10  law enforcement started receiving cell-site location data for that

11  phone.  Based on that data, on March 22, 2022, law enforcement

12  located defendant at or near a house on Amigo Avenue in Tarzana,

13  California.

14       The same day, FBI agents and FBI task-force officers went to

15  that house to arrest defendant on the outstanding warrant.  Around

16  12:15 p.m., law enforcement saw defendant stand in the house's

17  doorway as two women and two children left.  The women and children

18  drove away in a Cadillac Escalade.  About five minutes later,

19  defendant left the house in a black Mercedes GLS 600 Maybach, bearing

20  a California temporary license plate.  At least two law-enforcement

21  officers saw defendant sitting in the driver's seat, alone.

22       Soon after defendant left the house, two LAPD officers in a

23  marked police car tried to stop defendant's car by employing their

24  siren and emergency lights.  Initially, defendant appeared to comply

25  with the officer's directives: he stopped his car, rolled down his

26

27  ───────────────

28       [1] At trial, absent the defense "opening the door," the
    government will not seek to admit what crime the warrant charged
    defendant with.

                                    2

window, and dropped his key fob on the street.  But as the two
officers left their car to walk toward defendant's car -- which they
had instructed him to turn off -- defendant instead sped off in his
car.  The officers reentered their police car and tried to chase him.
Before police could catch up to him, defendant stopped his car and
fled on foot.  An LAPD helicopter patrol saw defendant leave his car
and flee on foot, tracked his flight path, and helped set up a
perimeter.  About two hours later, officers arrested defendant near
the hedge line of a backyard of a house in Tarzana.  Defendant did
not live at that house or any neighboring property, and no one had
given defendant permission to be on their properties.

**B.   Search**

Law enforcement officers searched defendant's car after
defendant fled.  On the floor behind the front passenger's seat, they
found the "FNX-45," attached to an optic, device and loaded with one
round of Hornady .45 caliber ammunition; the gun was a distinct gold
and tan color.  Also in defendant's car, officers found defendant's
Louisiana identification card; vehicle registration showing the car
was leased to defendant on March 12, 2021; a magazine with eleven
rounds of Hornady .45 caliber ammunition; tens of thousands of
dollars in cash; and over half a million dollars' worth of jewelry in
a case bearing the words "Shyne Jewelers."  The jewelry collection
included rare and highly valuable watches from brands like Audemars
Piguet, Patek Philippe, and Rolex, and custom pieces made by Josef
Roth, the owner of Shyne Jewelers.  The custom pieces included a
multicolor pendant with the letters "NBA," a multicolor necklace with
the letters "NBA," and a multicolor necklace and pendant with the
letters "NBA."  "NBA" stands for "Never Broke Again," which is part

3

of defendant's rap name, "YoungBoy Never Broke Again."  Defendant later asked for, and was granted, a return of his jewelry, his cash, and clothing he shed during his flight.

### C.   Investigation

No fingerprints on the gun were suitable for comparison, and because at least five people's DNA was on the gun, the FBI's DNA examiner could not test for defendant's DNA.  However, further investigation revealed that, a month before this arrest, defendant was photographed holding a gold and tan gun that appeared identical to the firearm recovered from his car.  That photograph was taken at the Shyne Jewelers shop in Philadelphia, Pennsylvania.  An agent from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") compared the gun in the photograph to the gun from defendant's car, and he concluded that the guns' appearances were consistent with being the same gun.  Songs written and performed by defendant also include mentions of both FN model guns and Shyne Jewelers.

Further investigation also revealed a December 27, 2020 Instagram post that shows defendant again holding a gold and tan gun in front of the home of Joseph Diggs, defendant's family friend.  Again, an ATF agent compared the gun in the video to the gun from defendant's car, and he concluded that the guns' appearances were consistent with being the same gun.  Additionally, law enforcement tracked the purchase of the gun recovered from defendant's car using the gun's unique serial number.  A receipt shows that the gun, an optic device, and Hornady .45 caliber ammunition were all bought by Joseph Diggs's brother, Joel Diggs, In December 2020, in Baton Rouge, Louisiana.

**III. STATEMENT OF CHARGES AND ELEMENTS OF EACH CHARGE**

Based on the foregoing evidence, the government indicted defendant for violating 18 U.S.C. § 922(g)(1): being a felon in possession of a firearm and ammunition.

For defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt: (1) defendant knowingly possessed a firearm or ammunition; (2) the firearm or ammunition traveled in interstate commerce; (3) at the time that defendant possessed the firearm or ammunition, defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year; and (4) at the time defendant possessed the firearm or ammunition, defendant knew that he had been convicted of a crime punishable by imprisonment for a term exceeding one year.  See Ninth Circuit Model Jury Instructions, No. 14.16.

In this case, the government has proposed stipulations to the second, third, and fourth elements to the defense, and the defense has indicated that they would agree to them.  Therefore, to the best of the government's knowledge, the only element that defendant plans to dispute is whether he knowingly possessed a firearm or ammunition.

**IV. DEFENDANT'S CUSTODY STATUS**

Defendant is released on bond pending trial.

**V. THE GOVERNMENT'S CASE-IN-CHIEF**

The government anticipates that its case-in-chief will last approximately three days, including the defense's cross-examination.[2] The government plans to call fifteen witnesses in its case-in-chief,

---

[2] The government has proposed a number of stipulations to defense counsel that, if accepted, will reduce the length of anticipated testimony.

but several of those witnesses will provide very limited and brief testimony.  The government plans to call:[3]

1.      Baton Rouge Police Department Detective Logan Collins;

2.      LAPD Sergeant Kevin Beard;

3.      FBI Special Agent Dezmond Beverly;

4.      LAPD Officer Jonathan Clodfelter;

5.      LAPD Officer Vanessa Henson;

6.      LAPD Officer Joshua Kniss;

7.      Camilo Montealegre, who lived at the property next door to where defendant was arrested;

8.      Isaac Radnia, who lived at the property where defendant was arrested;

9.      FBI Special Agent Andrew Roosa;

10.     Josef Roth, owner of Shyne Jewelers;

11.     FBI CAST Agent Chad Fitzgerald;

12.     FBI DNA Examiner Jessica Van Dyke;

13.     FBI Fingerprint Examiner Icel Kuznetsova;

14.     Jim McClain, owner of Jim's Firearms; and

15.     ATF Special Agent Kevin Allred.

## VI.  LEGAL AND EVIDENTIARY ISSUES

### A.  Pending Motions in Limine

As set forth in its Motion in Limine No. 1, the government seeks to introduce evidence at trial of defendant's prior acts as "inextricably entwined" with the charged conduct" or else subject to Federal Rule of Evidence 404(b).  (See Dkt. 68.)  Such evidence is

---

[3] The government reserves its right not to call any witness or to call additional witnesses, as needed, including in rebuttal.  For example, the government is considering calling one additional eyewitness to defendant's flight from police.

6

1 admissible, for the reasons set forth in the government's motion.

2 (See id.)  As set forth in its Motion in Limine No. 2, filed under

3 seal, and to be set forth in the government's Motion in Limine No. 3,

4 the government seeks to exclude at trial certain law-enforcement

5 testimony that defendant seeks to introduce.  Such evidence is

6 inadmissible, for the reasons set forth in the government's motions.

7 (See id.)

8     **B.   Relevance and Probative Value**

9     Only relevant evidence is admissible at trial.  Fed. R. Evid.

10 402.  Evidence is relevant if it has any tendency to make a fact of

11 consequence more or less probable than it would be without that

12 evidence.  Fed. R. Evid. 401.  A court may not exclude relevant

13 evidence unless its probative value is substantially outweighed by a

14 danger of unfair prejudice, confusing the issues, misleading the

15 jury, wasting time, or presenting cumulative evidence.  Fed. R. Evid.

16 403.  Here, the government seeks to introduce evidence narrowly

17 tailored to prove the charged crime.

18     **C.   Authentication and Identification**

19     Federal Rule of Evidence 901 requires parties to authenticate

20 recordings and documents by "produc[ing] evidence sufficient to

21 support a finding that the item is what the proponent claims it is."

22 Fed. R. Evid. 901(a).  "The burden on the proponent" to authenticate

23 evidence "is not heavy."  United States v. Hock Chee Koo, 770 F.

24 Supp. 2d 1115, 1121 (D. Or. 2011).  In fact, "the party offering the

25 evidence" need only "make a prima facie showing of authenticity 'so

26 that a reasonable juror could find in favor of authenticity or

27 identification.'"  United States v. Gadson, 763 F.3d 1189, 1203 (9th

28 Cir. 2014) (quoting United States v. Chu Kong Yin, 935 F.2d 990, 996

7

1    (9th Cir. 1991)).  Once a party meets the low threshold for

2    authentication, the evidence is admissible, and the opposing party

3    may "argue that the jury should give the evidence minimal weight."

4    United States v. Ortiz, 776 F.3d 1042, 1045 (9th Cir. 2015).  A party

5    may authenticate evidence through "[t]estimony that an item is what

6    it is claimed to be."  Fed. R. Evid. 901(b)(1).  To authenticate

7    something, "the person testifying need not have personal knowledge of

8    the contents" of the item and need not "personally know the time,

9    place, and manner in which the record was made."  United States v.

10   Sand, 541 F.2d 1370, 1377 (9th Cir. 1976).

11       **D.   Physical Evidence**

12       The government will seek to admit physical evidence that law

13   enforcement found in defendant's car -- namely, the FNX-45 firearm

14   and Hornady ammunition.  To be admitted into evidence, a physical

15   exhibit must be in substantially the same condition as when the crime

16   was committed.  The court may admit the evidence if there is a

17   "reasonable probability the article has not changed in important

18   respects."  United States v. Harrington, 923 F.2d 1371, 1374 (9th

19   Cir. 1991) (citation omitted).  This determination is for the trial

20   judge and will not be overturned except for an abuse of discretion.

21   Id.  Factors the Court may consider in making this determination

22   include the nature of the item, the circumstances surrounding its

23   preservation, and the likelihood of intermeddlers' having tampered

24   with it.  Gallego v. United States, 276 F.2d 914, 917 (9th Cir.

25   1960).  Here, law enforcement found the items in defendant's car just

26   after defendant abandoned it.  Special Agent Andrew Roosa's testimony

27   and photographs of the items when they were found will show that they

28   looked then substantially the same as they look now.

### E.  Chain of Custody

In establishing chain of custody for an item of physical evidence, the government is not required to call all persons who may have come into contact with it.  Id.  Moreover, a presumption of regularity exists in the handling of exhibits by public officials. Id.  Therefore, to the extent that any alleged or actual gaps in any chain of custody exists, such gaps go to that evidence's weight, not its admissibility.  Id.

### F.  Photographs

The government intends to introduce photographs of key evidence at trial.  Admitting a photograph into evidence requires that the proponent meet only a very low hurdle.  "Under the Federal Rules, the witness identifying the item in a photograph need only establish that the photograph is an accurate portrayal of the item in question." People of Territory of Guam v. Ojeda, 758 F.2d 403, 408 (9th Cir. 1985).  The Ninth Circuit has held that "[p]hotographs are admissible as substantive as well as illustrative evidence."  United States v. May, 622 F.2d 1000, 1007 (9th Cir. 1980).

Photographs should be admitted so long as they fairly and accurately represent the event or object in question.  See United States v. Oaxaca, 569 F.2d 518, 525 (9th Cir. 1978).  Notably, "the witness who lays the authentication foundation need not be the photographer, nor need the witness know anything of the time, conditions, or mechanisms of the taking of the picture."  32 McCormick on Evid. § 215 (7th ed.).

### G.  Video Recordings

The government will also introduce excerpts of video recordings of defendant's flight from police and eventual arrest.  A recording

9

is admissible upon a showing that it is "accurate, authentic, and generally trustworthy." United States v. King, 587 F.2d 956, 961 (9th Cir. 1978). Testimony that a recording depicts evidence that the testifying witness personally observed sufficiently authenticates that recording. Fed. R. Evid. 901(b); United States v. Smith, 591 F.3d 974, 979-80 (8th Cir. 2010). A witness can authenticate a recording without observing the depicted evidence if the witness (1) has personal knowledge of who or what is depicted in the recording and (2) can testify that the recording is a fair and accurate representation of that person or thing. See United States v. Wells, 827 F. App'x 664, 667 (9th Cir. 2020) (approving authentication of robbery video by witness who did not see robbery but had personal knowledge of victim and store depicted in video); Fed. R. Evid. 901(b)(1) (requiring only "[t]estimony that an item is what it is claimed to be" for authentication).

**H.   Duplicates**

A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original; or (2) under the circumstances, it would be unfair to admit the duplicate instead of the original. See Fed. R. Evid. 1003.

**I.   Maps and Diagrams**

Parties may introduce maps as substantive evidence. A witness can authenticate a map by testifying that the map is an "accurate depiction" of the area. United States v. Alejandro, 354 F. App'x 124, 128 (5th Cir. 2009); see also United States v. Hunter, No. 11-CR-2015-MV, 2012 WL 13076178, at *7 (D.N.M. Aug. 21, 2012); 2 Federal Trial Handbook: Criminal § 56:22 (2021). The Ninth Circuit has held that diagrams used to explain location and positioning are properly

10

1    admitted into evidence.  United States v. Pena-Gutierrez, 222 F.3d

2    1080, 1090-91 (9th Cir. 2000).

3         Parties may also use maps as demonstrative evidence to help the

4    jury understand trial evidence.  See United States v. Turner, 528

5    F.2d 143, 167-68 (9th Cir. 1975).  Demonstrative evidence, like

6    diagrams or maps, are admissible under Federal Rule of Evidence

7    611(a), which permits the Court to "exercise reasonable control over

8    the mode and order of interrogating witnesses and presenting evidence

9    so as to (1) make the interrogation and presentation effective for

10   ascertainment of the truth, (2) avoid needless consumption of time,

11   and (3) protect witnesses from harassment or undue embarrassment."

12   Fed. R. Evid. 611(a); see Baugh ex rel. Baugh v. Cuprum S.A. de C.V.,

13   730 F.3d 701, 708 (7th Cir. 2013) (noting under Rule 611 that use of

14   demonstrative evidence is "left to the sound discretion of the judge

15   presiding over the trial").

16        At trial, the government intends to introduce a Google Maps

17   Aerial View of the area in which defendant fled from police on March

18   22, 2021.  An LAPD officer who tracked defendant's movements from a

19   helicopter will authenticate the Google Maps Aerial View.  She may

20   also trace defendant's flight to help the jury understand how police

21   located him along the hedge line of the Redwing Street house.  The

22   government may also use a map as demonstrative evidence in its

23   closing argument to show defendant's location at different points

24   during his flight.

25        **J.    Lay Law Enforcement Testimony**

26        Federal Rule of Evidence 701 "permits a lay witness to give

27   opinion testimony as long as the opinion is (a) rationally based on

28   the perception of the witness and (b) helpful to a clear

                                    11

understanding of the witness's testimony or the determination of a fact in issue." United States v. Pino-Noriega, 189 F.3d 1089, 1097 (9th Cir. 1999) (cleaned up).  Lay opinion testimony by law enforcement officers is admissible and is not necessarily expert testimony within the meaning of Rule 16(a)(1)(G).  See United States v. VonWillie, 59 F.3d 922, 929 (9th Cir. 1995); see also United States v. Barragan, 871 F.3d 689, 703-04 (9th Cir. 2017).  As the Ninth Circuit has explained, law enforcement officers' opinion testimony:

> is a means of conveying to the [trier of fact] what the witness has seen or heard . . . .  Because it is sometimes difficult to describe the mental or physical condition of a person, his character or reputation, the emotions manifest by his acts; speed of a moving object or other things that arise in a day to day observation of lay witnesses; things that are of common occurrence and observation, such as size, heights, odors, flavors, color, heat, and so on; witnesses may relate their opinions or conclusions of what they observed.

United States v. Skeet, 665 F.2d 983, 985 (9th Cir. 1982); see United States v. Gadson, 763 F.3d 1189, 1209 (9th Cir. 2014) ("[A]n investigator who has accumulated months or even years of experience with the events, places, and individuals involved in an investigation necessarily draws on that knowledge when testifying; indeed, it is those out-of-court experiences that make the witness's testimony helpful to the [trier of fact].").  Rule 16 notice is not required for the opinions of lay witnesses.  United States v. Moreno, 243 F.3d 551, 551 (9th Cir. 2000).

### K.  Expert Opinion Testimony

A qualified expert witness may provide opinion testimony on a fact at issue if specialized knowledge will assist the trier of fact.

12

1  Fed. R. Evid. 702.  The Court has broad discretion to determine

2  whether to admit expert testimony.  United States v. Anderson, 813

3  F.2d 1450, 1458 (9th Cir. 1987).  Expert opinion may be based on

4  hearsay or facts not in evidence, where the facts or data relied upon

5  are of the type reasonably relied upon by experts in the field.  Fed.

6  R. Evid. 703.

7      At trial, the government has designated and intends to call four

8  experts: FBI Special Agent Kevin Allred, FBI Forensic Examiner

9  Jessica Van Dyke, FBI Forensic Examiner Icel Kuznetsova, and FBI

10 Special Agent Chad Fitzgerald.  The government noticed these

11 witnesses' testimony as expert testimony and summarized it for

12 defense counsel.  All are qualified to testify and provide expert

13 opinions.  First, Agent Allred's testimony will assist the jury in

14 understanding how the firearm in the photograph of defendant at Shyne

15 Jeweler's and defendant's Instagram video are both consistent with

16 the firearm that was found in his car on March 22, 2021.  Second,

17 Forensic Examiner Van Dyke's testimony will assist the jury in

18 understanding why DNA may not be found on a firearm, and why it is

19 difficult to identify DNA on a firearm when too many peoples' DNA are

20 present.  Third, Forensic Examiner Kuznetsova's testimony will assist

21 the jury in understanding why fingerprints may not be identifiable on

22 a firearm.  Fourth, Agent Fitzgerald's testimony will assist the jury

23 in understanding how cell site location data was used to confirm

24 that, on March 22, 2021, defendant's cell phone was in the area of

25 Tarzana, California, where law enforcement found the firearm and

26 ammunition, and where they surveilled and arrested defendant.[4]

27

28      [4] Any of the government's experts may also testify in the
   government's rebuttal case.

13

1

   **L.    Cross-Examination**

2      The scope of a cross-examination is within a trial court's

3 discretion.  Fed. R. Evid. 611(b).  The Court has broad authority to

4 control the extent of cross-examination, and "in its discretion may

5 limit cross-examination in order to preclude repetitive questioning,

6 upon determining that a particular subject has been exhausted, or to

7 avoid extensive and time-wasting exploration of collateral matters."

8 United States v. Weiner, 578 F.2d 757, 766 (9th Cir. 1978).

9      **M.    Cross-Examination of Defendant**

10      A defendant who testifies at trial may be cross-examined as to

11 all matters reasonably related to the issues he puts in dispute.

12 See, e.g., Ohler v. United States, 529 U.S. 753, 759 (2000) ("It has

13 long been held that a defendant who takes the stand in his own behalf

14 cannot then claim the privilege against cross-examination on matters

15 reasonably related to the subject matter of his direct examination."

16 (cleaned up)).  "A defendant has no right to avoid cross-examination

17 on matters which call into question his claim of innocence."  United

18 States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981).

19      Moreover, a defendant who testifies at trial waives his Fifth

20 Amendment privilege and may be cross-examined on matters made

21 relevant by his direct testimony.  United States v. Black, 767 F.2d

22 1334, 1341 (9th Cir. 1985) ("What the defendant actually discusses on

23 direct does not determine the extent of permissible cross-examination

24 or his waiver.  Rather, the inquiry is whether 'the government's

25 questions are reasonably related' to the subjects covered by the

26 defendant's testimony.") (cleaned up)).  The scope of a defendant's

27 waiver is co-extensive with the scope of relevant cross-examination.

28 United States v. Cuozzo, 962 F.2d 945, 948 (9th Cir. 1992).

### N.    Cross-Examination of Defense Character Witnesses

The Supreme Court has recognized that character evidence -- particularly cumulative character evidence -- has weak probative value and great potential to confuse issues and prejudice a jury. See Michelson v. United States, 335 U.S. 469, 480, 486 (1948).  The Court has thus given trial courts wide discretion to limit the presentation of character evidence.  Id.  The government does not know if defendant intends to offer any character witnesses at trial and, to date, defendant has made no offer of proof regarding the nature, scope, or admissibility of any character evidence.  He should be required to do so before putting on any such witnesses, so that the Court may first rule on any proffered testimony's admissibility.

In addition, the form of any proffered evidence must be proper. Federal Rule of Evidence 405(a) sets forth the sole methods by which character evidence may be introduced.  It specifically states that where evidence of a character trait is admissible, evidence may be offered in two ways: (1) by testimony as to reputation; or (2) by testimony as to opinion.  Thus, defendant may not introduce specific instances of his good conduct through others' testimony.  Id. at 477 ("The witness may not testify about defendant's specific acts or courses of conduct or his possession of a particular disposition or of benign mental or moral traits.").

On cross-examination of any character witnesses offered by defendant, the government may inquire into specific instances of defendant's past conduct relevant to any character trait at issue. See Fed. R. Evid. 405(a).  To that end, a defendant's character witnesses may be cross-examined about their knowledge of a defendant's past crimes, wrongful acts, and arrests, in order to

1   impeach the credibility of that witness's proffered character

2   evidence.  See Michelson, 335 U.S. at 481.  The only prerequisite is

3   that there must be a good-faith basis that the incidents inquired

4   about are relevant to a character trait at issue.  See United States

5   v. McCollom, 664 F.2d 56, 58 (5th Cir. 1981).

6       **O.   Hearsay**

7       At trial, the government intends to offer several out-of-court

8   statements that either are non-hearsay or else meet an exception to

9   the general rule against hearsay.

10          1.   Defendant's Prior Statements

11      The government may offer particular statements of defendant's,

12  including recorded rap songs written and performed by defendant (in

13  which he refers to an individual connected to the purchaser of the

14  gun, the gun model found in his car, and the jewelry maker of the

15  jewelry found next to the gun), and a recorded call made by defendant

16  when he was in custody in a Los Angeles facility.  In the call,

17  defendant describes fleeing from the police and does not mention the

18  presence of any other passenger in his car during his flight,

19  demonstrating that defendant was the driver who fled.

20      These recordings are not hearsay.  When offered by the

21  government, statements by a criminal defendant are admissions by a

22  third-party opponent and are therefore not hearsay under Federal Rule

23  of Evidence 801(d)(2).  In contrast, a defendant is not entitled to

24  elicit his own prior statements from other witnesses or recordings

25  under Federal Rule of Evidence 801(d)(2)(A), because they are hearsay

26  when offered by the defendant.  See United States v. Ortega, 203 F.3d

27  675, 682 (9th Cir. 2000).  To permit otherwise would place a

28  defendant's statements "before the jury without subjecting himself to

cross-examination, precisely what the hearsay rule forbids." Id.
(district court properly granted the government's motion in limine to
exclude defendant from introducing his own post-arrest statements
through the defense's cross-examination of a government witness).

The rule of completeness also does not entitle a defendant to
elicit his own inadmissible hearsay statements. In Ortega, the Ninth
Circuit held that non-self-inculpatory statements, even if made
contemporaneously with other self-inculpatory statements, are
inadmissible hearsay, and the rule of completeness does not allow for
admission of that inadmissible hearsay. Id. at 682; accord United
States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996) (holding that
Fed. R. Evid. 106 does not compel admission of otherwise inadmissible
hearsay). The rule also does not "require the introduction of any
unedited writing or statement merely because an adverse party has
introduced an edited version." United States v. Vallejos, 742 F.3d
902, 905 (9th Cir. 2014).

2.   Certified Business Records and Other Self-
Authenticating Evidence

At trial, the government may seek to introduce certified
business records, including (1) birth certificates for Joel Diggs,
the purchaser of the firearm found in defendant's car, and Joseph
Diggs, defendant's family friend, showing that they are brothers;
(2) the firearm receipt; and (3) LAPD audio dispatch recordings.

A document is admissible as a business record if two
foundational facts are established: (1) the document was made or
transmitted by a person with knowledge at or near the time of the
incident recorded; and (2) the document was kept in the course of a
regularly conducted business activity. See Fed. R. Evid. 803(6);

17

1   United States v. Ray, 930 F.2d 1368, 1370 (9th Cir. 1990); Kennedy v.

2   Los Angeles Police Dep't, 901 F.2d 702, 717 (9th Cir. 1990).

3       In determining if these foundational facts have been

4   established, the Court may consider hearsay and other evidence not

5   admissible at trial, including business records declarations.  See

6   Fed. R. Evid. 104(a), 1101(d)(1); Bourjaily v. United States, 483

7   U.S. 171, 178-79 (1987).  The foundation for business records may be

8   established through a custodian of records or any "other qualified

9   witness."  The phrase "other qualified witness" is broadly

10  interpreted to require only that the witness understand the record

11  keeping system.  See Ray, 930 F.2d at 1370.  "There is no requirement

12  that the government establish where and by whom the documents were

13  prepared."  Id.; accord United States v. Huber, 772 F.2d 585, 591

14  (9th Cir. 1985) ("[T]here is no requirement that the government show

15  precisely when the [record] was compiled.").

16      Records of regularly conducted activity that are otherwise

17  admissible under Rule 803(6) require no extrinsic evidence of

18  authenticity if they are accompanied by a written declaration by a

19  custodian of record certifying that the record: (1) was made at or

20  near the time of the occurrence of the matters set forth by, or from

21  information transmitted by, a person with knowledge of those matters;

22  (2) was kept in the course of regularly conducted activity; and

23  (3) was made by the regularly conducted activity as a regular

24  practice.  Fed. R. Evid. 902(11).

25      **P.  Reciprocal Discovery**

26      Rule 16 of the Federal Rules of Criminal Procedure creates

27  reciprocal discovery obligations for a defendant to produce three

28  categories of materials that a defendant intends to introduce as

18

evidence at trial: (1) documents and tangible objects; (2) reports of any examination or tests; and (3) expert witness disclosure.  Rule 16 imposes on defendant a continuing duty to disclose this discovery. Fed. R. Crim. P. 16(b)(1)(A), (b)(1)(C), & (c).  When a party, including a defendant, fails to produce discovery as required, Rule 16 empowers the district court to "prohibit that party from introducing the undisclosed evidence; or enter any other order that is just under the circumstances."  Fed. R. Crim. P. 16(d)(2).  The Ninth Circuit has held that where a defendant fails to produce reciprocal discovery, it is well within the district court's discretion to exclude such defense evidence, especially where the defense disclosure was made after the start of trial.  See United States v. Aceves-Rosales, 832 F.2d 1155, 1156-57 (9th Cir. 1987); United States v. Scholl, 166 F.3d 964, 972 (9th Cir. 1999); United States v. Nash, 115 F.3d 1431, 1439-40 (9th Cir. 1997).

On or about December 30, 2021 -- and again on March 23, 2022, April 22, 2022, April 29, 2022, May 4, 2022, May 9, 2022, June 1, 2022, June 7, 2022, June 14, 2022, June 17, 2022, June 19, 2022, June 20, 2022, and June 30, 2022 -- the government requested reciprocal discovery, and in particular, notice of defendant's intention to rely on an entrapment defense, a defense involving mental condition or duress, or an alibi defense.  To date, defendant has not indicated any intent to raise any affirmative defenses.  At trial, if defendant tries to introduce any evidence that he has not produced to the government, or seeks to rely on an undisclosed affirmative defense, the government reserves the right to object and to request that the Court exclude defendant's undisclosed evidence or affirmative defenses.

1    **Q.   Opening Statements**

2         "An opening statement has a narrow purpose and scope": (1) "to

3    state what evidence will be presented"; (2) "to make it easier for

4    the jurors to understand what is to follow"; and (3) "to relate parts

5    of the evidence and testimony to the whole." United States v.

6    Dinitz, 424 U.S. 600, 612 (1976).  Opening statement "is not an

7    occasion for argument." Id.  Opening statement should be "an outline

8    of a party's anticipated proof" and "should not refer to matters that

9    are not to be presented as evidence." United States v. McCabe, No.

10   96-30092, 1997 WL 753348, at *4 (9th Cir. 1997).  A trial court "can

11   exclude irrelevant facts and stop argument if it occurs" during

12   opening statements.  Id. (holding district court properly interrupted

13   defense counsel's opening statement where it "was argumentative,

14   inflammatory, and prejudicial").  Here, defendant should not be

15   permitted to make an opening statement that refers to evidence that

16   is neither listed on the government's exhibit list nor for which the

17   defense has made no offer of proof that it will be able to admit in

18   its own case.  See McCabe, 1997 WL 753348, at *4.

19   **R.   Jury Nullification**

20   The Court should exclude any evidence or argument relating to any

21   possible jury nullification defense.  "A court has the duty to

22   forestall or prevent nullification, including by firm instruction or

23   admonition." United States v. Kleinman, 880 F.3d 1020, 1032 (9th

24   Cir. 2017) (cleaned up).  "[N]either a defendant nor his attorney has

25   a right to present to a jury evidence that is irrelevant to a legal

26   defense to, or an element of, the crime charged." Zal v. Steppe, 968

27   F.2d 924, 930 (9th Cir. 1992) (Trott, J., concurring).  Rather,

28   "[v]erdicts must be based on the law and the evidence, not on jury

nullification as urged by either litigant." Id.  Similarly, a defendant has no right to a jury nullification instruction.  United States v. Powell, 955 F.2d 1206, 1213 (9th Cir. 1992).  Finally, under Federal Rules of Evidence 401 and 403, such evidence, arguments, or instructions are not relevant to any valid defense and thus would unnecessarily confuse the issues and mislead the jury.

**VII. CONCLUSION**

The government respectfully requests leave to supplement this Trial Memorandum, as appropriate.

Dated:  July 8, 2022    Respectfully submitted,

STEPHANIE S. CHRISTENSEN
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

*/s/*
AMANDA B. ELBOGEN
RAJESH R. SRINIVASAN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA